1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10

11   WEATHER REPORT LLC,                    Case No. 2:22-cv-01480-FLA (KSx)
12                        Plaintiff,
                                            **ORDER GRANTING IN PART**
13         v.                               **DEFENDANT DENTIN GARRETT'S**
                                            **MOTION TO DISMISS AND**
14                                          **DISMISSING WITHOUT**
     DENTIN GARRETT, et al.                 **PREJUDICE PLAINTIFF'S SECOND**
15                                          **THROUGH SEVENTH CLAIMS**
                          Defendants.       **[DKT. 16]**
16
17

18

19                          <u>**RULING**</u>

20         Before the court is Defendant Dentin Garrett's ("Defendant" or "Garrett")

21   Motion to Dismiss ("Motion") the second through seventh claims of the First

22   Amended Complaint ("FAC").  Dkt. 16 ("Mot.").  Plaintiff Weather Report

23   ("Plaintiff" or "Weather Report") opposes the Motion.  Dkt. 31 ("Opp'n").

24         On July 11, 2022, the court found this matter appropriate for resolution without

25   oral argument and vacated the hearing set for July 15, 2022.  Dkt. 40; *see* Fed. R. Civ.

26   P. 78(b); Local Rule 7-15.  For the reasons stated herein, the court GRANTS in part

27   the Motion and DISMISSES Plaintiff's second through seventh claims with 20 days'

28   leave to amend.  Defendant's request for attorney's fees and costs is DENIED.

1

**BACKGROUND**

Plaintiff states the following allegations in the FAC.[1]  Weather Report is a California limited liability company specializing in the production of nonfungible tokens ("NFTs").  Dkt. 11 ("FAC") ¶¶ 9, 20–21.  Garrett is a digital illustrator who creates and designs NFTs.  *Id.* ¶ 10; Mot. at 2.

In December 2021, Weather Report sought to develop an NFT project focused on "the celebration of emotion through the universal language of weather."  FAC ¶¶ 2, 24–25.  Subsequently, it reached out to Garrett and orally offered to pay him a flat fee in exchange for "perform[ing] certain work related to executing Weather Report's creative expression."  *Id.* ¶ 25.  One partly oral and partly implied term of the parties' agreement was a confidentiality provision preventing Garrett from using or disclosing any ideas or artwork related to the project to third parties.  *Id.* ¶ 28.  According to Weather Report, Garrett agreed to these terms, and the parties' working relationship began on an unspecified date in "early 2022."  *Id.* ¶¶ 25, 28.

Over the following weeks, Weather Report's principal, Zach Hunkins ("Hunkins"), spent "countless hours, virtually daily, on Zoom calls with Garrett, meticulously guiding and refining" the NFT designs and providing Garrett "a constant stream of pre-existing and new input, concepts, revisions, and references every step of the way."  *Id.* ¶ 25.  Accordingly, Weather Report contends Garrett did not contribute original creative expression to the NFT project, but only executed Weather Report's vision and expression as its instrumentality.  *Id.* ¶ 26.  On an unspecified date, Weather Report offered to replace Garrett's flat fee with a five percent financial participation share in the project, and Garrett accepted.  *Id.* ¶¶ 26–27.

Subsequently, "[j]ust as Weather Report was gaining widespread acclaim in the NFT world," Garrett demanded greater compensation and full intellectual property

---

[1] For purposes of the subject Motion, the court treats the factual allegations of the FAC as true.  *See Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

rights in the project.  *Id.* ¶¶ 4, 29.  According to Plaintiff, Garrett threatened to "sabotage the project with a dubious claim of copyright infringement" if Weather Report refused to grant him significantly more equity in the project.  *Id.* ¶ 4.  As a result, Weather Report "expelled" Garrett from the project and "hired new artists to execute the original vision, using new and different expression."  *Id.* ¶ 5.  Garrett allegedly "followed through with his threat of a smear campaign" and made statements that Weather Report's principals were "untrustworthy, dishonest, exploitative of [their] workers, and abusive towards women."  *Id.* ¶ 6.  Weather Report additionally alleges Garrett released a nearly identical NFT project two days prior to the sale of Weather Report's NFTs (the "mint date"), and stated publicly that Weather Report's NFT project "incorporated his original artwork which ha[d] been misappropriated by Weather Report."  *Id.* ¶¶ 7–8, 40.

On March 4, 2022, Weather Report filed the Complaint in this action, asserting one claim for a declaratory judgment of non-infringement of any copyright held by Garret.  Dkt. 1 ¶ 1.  On May 16, 2022, Weather Report filed the FAC adding the second through seventh claims for trade libel, breach of contract, promissory fraud, misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426–3426.11 (the "CUTSA"), unfair competition in violation of Cal. Bus. & Prof. Code § 17200, et seq. (the Unfair Competition Law, or "UCL"), and common law unfair competition.  FAC.

On June 6, 2022, Garett filed the subject Motion, requesting the court dismiss the second through seventh claims of the FAC.  *See generally* Mot.

## DISCUSSION

### I.    Legal Standard

Under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted."  The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of claims asserted in a complaint.  *Rutman Wine Co. v. E. & J. Gallo*

*Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to state a cognizable legal theory."  *Caltex*, 824 F.3d at 1159 (9th Cir. 2016).

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations and brackets omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level…."  *Id.* (internal citations omitted).  When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff."  *Caltex*, 824 F.3d at 1159.  Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

## II. Analysis

### A. Second Claim for Trade Libel

 Under California law, trade libel, or disparagement, is "a knowingly false or misleading publication that derogates another's property or business and results in special damages."  *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 291 (2014) (citation omitted).

> In evaluating whether a claim of disparagement has been alleged, courts have required that the defendant's false or misleading statement have a degree of specificity that distinguishes direct criticism of a competitor's product or business from other statements extolling the virtues or superiority of the defendant's product or business.  ... [D]isparagement involves two distinct but related specificity requirements.  A false or misleading statement (1) must

specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business. Each requirement must be satisfied by express mention or by clear implication.

*Id.* at 291.

Courts in the Ninth Circuit apply a heightened pleading standard to trade libel claims[2] and require a plaintiff to plead specific facts sufficient to establish disparagement plausibly, including: (1) the speaker, (2) the substance of the statements, (3) to whom the statements were made, and (4) the time, place, and manner of publication. *E.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1154 (N.D. Cal. 2019); *Marantz Bros., LLC v. Tate & Lyle Ingredients Ams. LLC*, Case No. 2:20-cv-00317-PSG (AFMx), 2020 WL 6036319, at *8 (C.D. Cal. July 6, 2020).

Plaintiff alleges Defendant "threatened to wrongfully publicly accuse Weather Report of copyright infringement and artistic misappropriation unless a bounty was paid," and subsequently "publicly stat[ed] the greatly injurious falsehood that Weather Report's NFT project incorporated his original artwork which ha[d] been misappropriated by Weather Report." FAC ¶ 40. Plaintiff does not plead specific facts regarding the time, place, and manner of Garrett's alleged statements or to whom such statements were allegedly made. *See, e.g.*, *AlterG*, 388 F. Supp. 3d at 1154. Furthermore, as the FAC does not state the exact language allegedly used by Garrett, it is unclear whether the alleged statements were actionable false statements of fact or nonactionable lay opinions regarding the application of copyright law. *See Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact."). Plaintiff, thus, fails to

---

[2] Plaintiff contends "[t]here is no 'heightened pleading standard' for trade libel, as there is for fraud." Opp'n at 8. Plaintiff does not cite any legal authority in support of its assertion, and its argument, thus, fails.

plead sufficient facts to meet the heightened burden to state a trade libel claim. *See AlterG*, 388 F. Supp. 3d at 1154.

Furthermore, as special damages are a necessary element of a trade libel claim, the special damages "must be specifically stated." *See* Fed. R. Civ. P. 9(g). "To prevail, a plaintiff 'may not rely on a general decline in business arising from the [alleged] falsehood, and must instead identify particular customers and transactions of which it was deprived as a result of the libel.'" *Daw Indus. v. Hanger Orthopedic Grp., Inc.*, 556 Fed. App'x 604, 605 (9th Cir. 2014) (quoting *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004)). "A bare allegation of the amount of pecuniary loss alleged is insufficient." *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998).

Plaintiff does not state any specific facts regarding its alleged special damages and pleads only that "Plaintiff suffered direct financial harm because others relied on Defendant Dentin Garrett's false statements." FAC ¶ 42. These allegations are insufficient to satisfy the heightened pleading standards required to state a trade libel claim. *See Daw*, 556 Fed. App'x at 605; Fed. R. Civ. P. 9(g).

Accordingly, the court GRANTS the Motion and DISMISSES without prejudice Plaintiff's second claim for trade libel.

### B.   Third Claim for Breach of Contract

The elements of a claim for breach of contract are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "An express contract is one, the terms of which are stated in words." Cal. Civ. Code § 1620. "An implied contract is one, the existence and terms of which are manifested by conduct." *Id.* § 1621. "To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in *haec verba* or according to legal effect." *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989). "While it is unnecessary for a plaintiff to

allege the terms of the alleged contract with precision, the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." *Langan v. United Servs. Auto Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (citations omitted).

The FAC alleges "Plaintiff and Defendant Dentin Garrett entered into a contract whereby Defendant Dentin Garrett agreed to help with illustrations for the Weather Report NFT project, working directly under Zach's creative direction." FAC ¶ 45. Plaintiff further alleges "the parties agreed[] that Dentin Garrett would be paid a flat fee to perform certain work related to executing Weather Report's creative expression." *Id.* According to Plaintiff, "the parties' agreement was both oral and implied," and "[o]ne partly oral and partly implied term of the contract was that Weather Report's ideas for the project, including ideas relating to artwork and the weather/emotion theme, were to be held in strict confidence, and not used or disclosed by Dentin except for the benefit of the project and as specifically agreed by Weather Report." *Id.* ¶ 46. Plaintiff also alleges at several meetings, "Dentin Garrett indicated his assent and that he of course understood the need for confidentiality…." *Id.* ¶¶ 28, 46.

At an unspecified date, Plaintiff's principals allegedly offered Garrett a 5% interest in the project, instead of the flat fee to which the parties had previously agreed, and Garrett accepted the offer. *Id.* ¶¶ 26–27. According to Plaintiff, "[j]ust as Weather Report was gaining widespread acclaim in the NFT World," Defendant announced that "[u]nless he received full intellectual property rights to creative work that predated his involvement, and significantly more equity, he would sabotage the project with a dubious claim of copyright infringement," including by "claim[ing] that the artwork he worked on for Weather Report were his original creations…." *Id.* ¶ 4 (italics omitted). The FAC states Plaintiff's principals subsequently "expelled Dentin from the project and, in an abundance of caution, promptly jettisoned any artistic expression Denton had worked on." *Id.* ¶ 5.

Garrett argues the breach of contract claim should be dismissed because Weather Report failed to plead sufficient facts to establish its performance under the alleged contract or offer an excuse for its failure to perform.  Mot. at 13.  Plaintiff contends it has pleaded sufficient facts to establish its performance and Garrett's breach of the contract.  Opp'n at 14–15.  The court agrees with Defendant.

"[I]n contract law[,] a material breach excuses further performance by the innocent party."  *De Burgh v. De Burgh*, 39 Cal. 2d 858, 863 (1952).  "The failure or refusal to perform an obligation assumed expressly or by implication, or the voluntary abandonment of the contract, releases the obligee from the duty of making demand, and performance or tender, and justifies him in abandoning the contract…."  *Walker v. Harbor Bus. Blocks Co.*, 181 Cal. 773, 778 (1919)).

The FAC alleges Plaintiff entered into an oral or implied contract with Garrett, whereby Garrett agreed to create illustrations for use in the Weather Report NFT project for a flat fee, which the parties subsequently amended to provide for a 5% interest in the project in lieu of the flat fee.  FAC ¶¶ 24–27.  The FAC further alleges Garrett created illustrations pursuant to the parties' agreement.  *Id.* ¶¶ 25–26.  According to the FAC, Garrett was "expelled" from the project after he asserted copyrights in the illustrations and attempted to negotiate more equity in the project, and that Plaintiff proceeded with the project after removing Garrett's contributions.  *Id.* ¶¶ 4–5.

Plaintiff contends Garrett breached the confidentiality provisions of the parties' oral or implied agreement by "misappropriating and misusing Weather Report's confidential and proprietary information and by publicly and falsely accusing Weather Report of stealing Garrett's artwork and using it as Weather Report's NFTs."  Opp'n at 14–15 (citing FAC ¶¶ 45, 47–48).  The allegations of the FAC, however, make clear that Garrett's conduct occurred after he was "expelled" from the project.  *See* FAC ¶¶ 4–5.  Plaintiff does not plead any facts to establish Garrett received either the agreed-upon flat fee or 5% interest in the project.  *See* FAC.  Accordingly, based on the facts

pleaded, Garrett was excused from complying with any of the terms of the alleged agreement between the parties, including the alleged confidentiality provision, based on Plaintiff's abandonment of the contract and/or material breach and non-payment. *See De Burgh*, 39 Cal. 2d at 863.

Plaintiff argues "it performed its obligations under the contract by providing information and material about its NFT project to Garrett and spending 'countless hours' working with Garrett on the Weather Report project." Opp'n at 14.  It is undisputed, however, that the parties initially agreed Garrett would receive a flat fee for his work, which the parties subsequently renegotiated to a 5% interest in the project.  FAC ¶¶ 25–27; *see* Opp'n at 14.  Plaintiff's claim that it provided "information and material about its NFT project to Garrett" and spent "countless hours" working with him is insufficient to establish Plaintiff provided the agreed-upon consideration or substantially performed its obligations under the parties' alleged agreement.  Plaintiff's argument, thus, fails.

To the extent Plaintiff contends its failure to pay Garrett was excused and justified because Garrett first breached the alleged agreement between the parties by claiming copyright over the illustrations he created and attempting to negotiate more equity in the project, *see* FAC ¶ 4, Plaintiff fails to plead sufficient facts to establish Garrett did not own copyrights in the illustrations and was not entitled to seek additional compensation in exchange for his copyrights.

"The Copyright Act of 1976 provides that copyright ownership 'vests initially in the author or authors of the work.'"  *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 201(a)).  "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."  *Id.* (citing 17 U.S.C. § 102).  "The Act carves out an important exception, however, for 'works made for hire.'"  *Id.*  "If the work is for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a

written agreement to the contrary." *Id.* (citing 17 U.S.C. § 201(b)).

The Copyright Act defines two categories of "works made for hire":

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101.

"The structure of [17 U.S.C.] § 101 indicates that a work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors[.]" *Reid*, 490 U.S. at 742–43. Thus, an independent contractor hired to create a work owns the copyright in a work as its author unless the parties expressly agree the work shall be considered a work made for hire in a signed, written instrument. *Id.* at 743; 17 U.S.C. § 101(2).

Plaintiff does not plead any facts to establish: (1) Garrett was its employee, (2) the parties signed and executed a written instrument that expressly stated the illustrations created by Garrett would be works made for hire,[3] or (3) any other grounds that would have barred Garrett from asserting any copyrights he may have

_____

[3] The FAC alleges Plaintiff's principals "developed most of the creative vision for the project between themselves," and that Garrett "did not … contribute original creative expression" and was only "an instrumentality of Weather Report and its principals, using his hand to execute the latter's vision and expression." FAC ¶¶ 2, 26. In *Reid*, 490 U.S. at 742, the Supreme Court held that a commissioning party's actual control and supervision of an independent contractor in creating a particular work is insufficient to vest ownership of the copyright in the commissioning party under 17 U.S.C. § 101(2). Plaintiff's allegations regarding supervision and control of Garrett's work are not sufficient to establish Weather Report or its principals authored and own copyrights in illustrations Garrett created.

10

had in the illustrations to negotiate more equity in the project.[4]  *See* FAC.  The FAC, thus, does not state sufficient facts to plead plausibly that Garrett materially breached the parties' alleged agreement before he was "expelled" from the project.

Accordingly, the court GRANTS in part the Motion and DISMISSES without prejudice Plaintiff's third claim for breach of contract.

## C.   Fifth Claim for Misappropriation of Trade Secrets

To state a claim for misappropriation of trade secrets under the CUTSA, a plaintiff must allege: "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020);[5] Cal. Civ. Code § 3426.1(b) (defining misappropriation under the CUTSA).

Under the CUTSA:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

---

[4] The court declines expressly to decide whether Garrett owned copyrights in any illustrations he created for Weather Report, as that issue is not properly before the court on the subject Motion.  The court finds only that Plaintiff has not pleaded sufficient facts to establish Garrett did not own copyrights to the illustrations and was not legally entitled to assert such copyrights to negotiate more equity in the project.

[5] In *Inteliclear*, 978 F.3d at 657–58, the Ninth Circuit identified the stated elements as the elements for a misappropriation of trade secrets claim under the federal Defend Trade Secrets Act ("DTSA").  The Ninth Circuit, however, additionally recognized it is appropriate to analyze misappropriation claims under the DTSA and CUTSA together "because the elements are substantially similar."  *Id.* at 957.  The court, therefore, finds the elements stated in *Inteliclear* also apply to a misappropriation claim under the CUTSA.  *See also, e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880–81 (N.D. Cal. 2018) ("Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets.").

11

1
2
        (2) is the subject of efforts that are reasonable under the
        circumstances to maintain its secrecy.

3 Cal. Civ. Code § 3426.1(d).

4       While "a plaintiff need not spell out the details of the trade secret," he or she

5 "must describe the subject matter of the trade secret with sufficient particularity to

6 separate it from matters of general knowledge in the trade or of special persons who

7 are skilled in the trade, and to permit the defendant to ascertain at least the boundaries

8 within which the secret lies." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d

9 69, 75 (N.D. Cal. 2020) (quotation marks omitted); *Diodes, Inc. v. Franzen*, 260 Cal.

10 App. 2d 244, 253 (1968).

11       Garrett argues Weather Report's CUTSA claim must be dismissed because

12 Plaintiff fails to identify the purported trade secrets with requisite particularity.  Mot.

13 at 16–17.  Weather Report responds Garrett misappropriated trade secrets comprising

14 "the very concept of its NFTs and Weather Report's original artwork, materials, brand

15 strategies, analytics, and customer leads provided to Garrett."  Opp'n at 19 (citing

16 FAC ¶ 61).  The court agrees with Defendant that Weather Report fails to describe the

17 subject matter of its trade secrets with sufficient particularity to state a

18 misappropriation claim under the CUTSA.

19       First, Plaintiff's contention that "the very concept of its NFTs" was a trade

20 secret fails as a matter of law, as publicly disclosed ideas and concepts do not

21 constitute trade secrets.  *Altavion, Inc. v. Konica Minolta Sys., Labs., Inc.*, 226 Cal.

22 App. 4th 26, 60 (2014).  Plaintiff contends the concept of the NFTs centered around

23 "weather and emotion."  Opp'n at 31 (citing FAC ¶ 22); *see also* FAC ¶ 28.

24       Garrett contends evidence subject to judicial notice, in the form of documents

25 Plaintiff submitted to the United States Patent and Trademark Office ("USPTO") on

26 January 14, 2022, in connection with U.S. Trademark Application Serial No.

27 97/221,291, demonstrate Weather Report began publicly marketing artwork

28 embodying its "ideas" and the "weather/emotion theme" well before Garrett was

"expelled" from the project.  Mot. at 20–21 (citing Dkt. 61-1 (Harms Decl.), Ex. A).
Similarly, the FAC alleges "a project of this magnitude is generally announced
months in advance," and that Weather Report's NFT project "gain[ed] widespread
acclaim in the NFT world" before Garnett engaged in any of the conduct alleged.
FAC ¶¶ 4–6, 8.  Plaintiff does not dispute it publicly disclosed the concept and
"weather/emotion theme" of the NFTs before Garrett engaged in any of the conduct
alleged.  *See* Opp'n.

Based on these allegations and undisputed evidence, the court finds Plaintiff has
failed to plead plausibly that the "weather/emotion" concept of Weather Report's
NFTs constituted a trade secret.  *See Altavion*, 226 Cal. App. 4th at 60; *see also* Cal.
Civ. Code § 3426.1(d)(2) (a trade secret must be "the subject of efforts that are
reasonable under the circumstances to maintain its secrecy.").

Second, Plaintiff's claim that its work products, "including, but not limited to,
designs, brand strategies, concepts, and proprietary analytics," constituted trade
secrets, FAC ¶ 61, are conclusory and insufficient to support a CUTSA claim.  These
allegations are vague and do not "describe the subject matter of the trade secret[s]
with sufficient particularity to separate [them] from matters of general knowledge in
the trade or of special persons who are skilled in the trade, and to permit the defendant
to ascertain at least the boundaries within which the secret[s] lie[]."  *See Navigation
Holdings*, 445 F. Supp. 3d at 75; *see also Farhang v. Indian Inst. of Tech., Kharagpur*,
Case No. 3:08-cv-02658-RMW, 2010 WL 2228936, at *14 (N.D. Cal. June 1, 2010)
(finding allegations that "business models and implementations" constituted trade
secrets insufficient).

Third, Plaintiff's claim that its original artwork constituted trade secrets fails
because the FAC does not plead any facts to suggest Garrett had not created and did
not own copyrights in the artwork in question.  *See* FAC ¶ 1 ("The purpose of
[Garrett's] engagement was to … create artwork for use in the project.").  The FAC
alleges specifically that Weather Report "promptly jettisoned any artistic expression

1   Dentin had worked on, … went back to the drawing board of the ideas and concepts
2   they had originally furnished to Dentin, … [and] hired new artists to execute the
3   original vision, using new and different expression," after Garrett was "expelled" from
4   the project.  *Id.* ¶ 5.  As stated, Plaintiff fails to plead any facts to establish Garrett did
5   not own copyrights in the artwork he created for the project or was not legally entitled
6   to use such artwork after he was "expelled" from the project.  Weather Report, thus,
7   fails to plead plausibly that its "original artwork" constituted trade secrets.

8   Fourth, Plaintiff's contention that its "customer leads" constituted trade secrets
9   fails because Weather Report does not plead sufficient facts to establish the nature of
10  its "customer leads" or to "describe the subject matter of the trade secret with
11  sufficient particularity[.]"  *Cf. Navigation Holdings*, 445 F. Supp. 3d at 77 (finding
12  client list constituted a trade secret where plaintiffs described their clientele, what
13  information plaintiffs maintained about their clientele, and the work put into
14  assembling the database).  It is unclear whether Weather Report's alleged "customer
15  leads" comprised a database of actual potential customers and their contact
16  information, or "matters of general knowledge in the trade or of special persons who
17  are skilled in the trade."  *See id.* at 75.  Plaintiff's assertion that its "customer leads"
18  constitute trade secrets is not sufficient "to permit the defendant to ascertain at least
19  the boundaries within which the secret lies."  *See id.*

20  Nor does Weather Report allege facts to establish the manner in which Garrett
21  allegedly misappropriated its "customer leads," or demonstrate that Garrett's use of
22  any "customer leads" was improper.  *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991
23  F.2d 511, 521 (9th Cir. 1993) ("[M]isappropriation occurs if information from a
24  customer database is used to *solicit* customers.  Merely informing a former employer's
25  customers of a change of employment, without more, is not solicitation" (emphasis in
26  original, citations omitted)).  Similarly, Plaintiff fails to plead facts to establish it was
27  harmed by Garrett's alleged misappropriation of its "customer leads," given that the
28  FAC alleges Weather Report's entire NFT collection "sold out."  *See* FAC ¶ 6.

1    In sum, the court finds Plaintiff fails to plead the existence of any trade secrets

2    with sufficient particularity to support a CUTSA claim.  The court, therefore,

3    GRANTS in part the Motion and DISMISSES without prejudice Plaintiff's fifth claim

4    for misappropriation of trade secrets.[6]

5        **D.     Fourth Claim for Promissory Fraud**

6        "Promissory fraud is a subspecies of fraud."  *UMG Recordings, Inc. v. Glob.*

7    *Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015).  "A plaintiff asserting a

8    promissory fraud claim must plead and prove that the defendant made a promise to

9    him that it had no intention of performing."  *Id.*  "An action for promissory fraud may

10   lie where a defendant fraudulently induces the plaintiff to enter into a contract."

11   *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 973–74 (1997) (quotation

12   marks omitted).

13       "The elements of fraud that will give rise to a tort action for deceit are: (a)

14   misrepresentation (false representation, concealment, or nondisclosure); (b)

15   knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

16   justifiable reliance; and (e) resulting damage."  *Id.* at 974 (quotation marks omitted).

17   Pursuant to Fed. R. Civ. P 9(b) ("Rule 9(b)"), a party alleging fraud "must state with

18   particularity the circumstances constituting fraud[.]"  "[T]he pleader must state the

19   time, place, and specific content of the false representations as well as the identities of

20   the parties to the misrepresentation."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553

21   (9th Cir. 2007).  "Rule 9(b) requires the identification of the circumstances

22   constituting fraud so that the defendant can prepare an adequate answer from the

23   allegations."  *Id.* (quotation marks omitted).  "Malice, intent, knowledge, and other

24   conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

25   / / /

26

27   [6] Garrett's request for attorney's fees and costs is DENIED, as Defendant fails to
     establish Weather Report asserted the CUTSA claim in bad faith.  *See* Cal. Civ. Code
28   § 3426.4

Garrett contends Plaintiff's promissory fraud claim fails because the FAC does not plead the alleged fraud with specificity.  Mot. at 23 n. 7.  Plaintiff responds it has sufficiently alleged "Garrett agreed to work for Weather Report and made promises to Weather Report to induce Weather Report to enter into such agreement," including by making "representations, during a January 12, 2022, telephone conference, in which Garrett promised … to maintain the confidentiality of Weather Report's concepts, ideas, and anticipated artwork for Weather Report's NFT project."  Opp'n at 17–18;[7] FAC ¶ 54.  The FAC alleges "[t]hese promises were false and were known by Dentin Garrett to be false at the time they were made, in that Denton Garrett knew he had no intention [to] maintain the confidentiality of Weather Report's NFT project."  FAC ¶ 54.  According to Plaintiff, "[s]uch intent is obvious given the totality of circumstances, including Denton Garrett's quick, repeated, and systemic breaches, manipulations, false excuses, and false explanations, and other misconduct including making false accusations of copyright infringement against Weather Report."  *Id.*

As stated, the factual allegations of the FAC clearly establish Garrett created illustrations for Plaintiff pursuant to the parties' alleged agreement, FAC ¶¶ 25–27, and that the conduct identified by Plaintiff as evidence of Garrett's fraudulent intent occurred only after Plaintiff "expelled" him from the project and terminated the alleged agreement between the parties, *id.* ¶¶ 4–5.  Based on the facts pleaded, Garrett's alleged conduct, including: (1) asserting copyrights in illustrations he created to negotiate a greater interest in the project, and (2) failing to comply with the confidentiality provisions of the parties' alleged agreement after he was "expelled" from the project, cannot establish plausibly that Garrett did not intend to comply with his alleged promise to maintain the confidentiality of Weather Report's NFT project

---

[7] The Opposition contends Garrett also "promised to remain loyal to Weather Report while working for the Company."  Opp'n at 18.  Plaintiff, however, has not pleaded such facts in the FAC.  *See* FAC ¶ 53.  The court does not consider Plaintiff's arguments that are not supported by the pleadings.

when it was made, or that he made such promise intending to defraud Plaintiff.  *See Engalla*, 15 Cal. 4th at 974.

Accordingly, the court GRANTS in part the Motion and DISMISSES without prejudice Plaintiff's fourth claim for promissory fraud.

**E.    Sixth and Seventh Claims for Statutory and Common Law Unfair Competition**

Plaintiff's unfair competition claims, and the parties' arguments regarding the sufficiency thereof, are based and dependent upon the sufficiency of Plaintiff's second through fifth claims.[8]  *See* FAC ¶ 67 ("Defendants, by means of the conduct above, have engaged in, and are engaging in, unlawful, unfair, fraudulent, and deceptive business practices …."); *id.* ¶ 75 ("The above-described conduct of Defendants constitutes unfair competition under the common law of the State of California."); Mot. at 24–25, n. 8 (arguing the sixth and seventh claims are insufficiently pleaded); Opp'n at 20–21 (arguing the claims are sufficiently pleaded).  Having dismissed the underlying second through fifth claims, the court similarly DISMISSES without prejudice Plaintiff's sixth and seventh claims for statutory and common law unfair competition.

/ / /

/ / /

/ / /

---

[8] Plaintiff's first claim is for a declaratory judgment of non-infringement of any copyright held by Garrett.  FAC ¶¶ 31–38.  Plaintiff's unfair competition claims are not dependent upon the first claim.

**CONCLUSION**

For the foregoing reasons, the court GRANTS Garrett's Motion (Dkt. 16) and DISMISSES Weather Report's second through seventh claims with 20 days' leave to amend.  Having granted the motion for the reasons stated, the court need not address the parties' remaining arguments.  Defendant's request for attorney's fees and costs is DENIED.


IT IS SO ORDERED.


Dated: July 11, 2023

_____

FERNANDO L. AENLLE-ROCHA
United States District Judge